NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|   |   |   |
|---|---|---|
| THE SHERWIN-WILLIAMS COMPANY, | : | |
| Plaintiff, | : | Civil Action No. 15-8409 (BRM)(LHG) |
| v. | : | **OPINION** |
| TMZ ENTERPRISES, INC. d/b/a PINTO AUTO BODY, INC. and DOMINICK ZAPPIA, | : | |
| Defendants. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Plaintiff The Sherwin-Williams Company's ("Sherwin-Williams" or "Plaintiff") Motion for Summary Judgment. (ECF No. 44.) Defendants TMZ Enterprises, Inc. d/b/a Pinto Auto Body, Inc. ("TMZ") and Dominick Zappia (individually, "Zappia"; collectively with TMZ, "Defendants") oppose the motion. (ECF No. 48.) Pursuant to Federal Rule of Civil Procedure 78(a), the Court heard oral argument on August 24, 2017. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED**.

## I. FACTUAL BACKGROUND

This matter arises from a dispute over a supply contract (the "Supply Agreement" or "Agreement") in which TMZ agreed to purchase automotive paint and related products from Sherwin-Williams. Sherwin-Williams is an Ohio corporation that manufactures and sells automotive paints. (Plaintiff's Statement of Undisputed Material Facts (ECF No. 44-2) ¶ 1 and Defendant's Reply to Plaintiff's Statement of Undisputed Material Facts (ECF No. 49) ¶ 1.) TMZ is a New Jersey corporation in the business of painting and repairing automobiles. (ECF No. 44-2

1

¶ 2 and ECF No. 49 ¶ 2.) On or around June 20, 2014, Sherwin-Williams installed a water-based paint system at TMZ for which TMZ was not charged. (ECF No. 44-2 ¶ 4 and ECF No. 49 ¶ 4.) On or about July 7, 2014, TMZ entered into the Supply Agreement with Sherwin-Williams, which Zappia negotiated on behalf of TMZ. (ECF No. 44-2 ¶¶ 8-9 and ECF No. 49 ¶¶ 8-9.) TMZ tested the water-based paint system and decided it no longer wanted to use it, so Sherwin-Williams installed a solvent-based system at TMZ on or around July 15, 2014. (ECF No. 44-2 ¶¶ 10-11 and ECF No. 49 ¶¶ 10-11.)

### A. The Supply Agreement's Terms

The Supply Agreement provided TMZ would purchase exclusively from Sherwin-Williams all of its requirements for all automotive paints, coatings, and related products from July 7, 2014, until TMZ has purchased $554,000.00 worth of supplies. (ECF No. 44-2 ¶ 12 and ECF No. 49 ¶ 12.) Pursuant to the Agreement, on or about July 21, 2014, Sherwin-Williams made a prepaid discount of $85,000.00 (the "Advance") to TMZ. (ECF No. 44-2 ¶¶ 13-14 and ECF No. 49 ¶¶ 13-14.) The Supply Agreement included an acceleration clause, which provided, in pertinent part, TMZ would repay the Advance if: (1) TMZ failed to pay the amount owned under the Agreement or breached the Agreement in any way; (2) TMZ terminated the Supply Agreement before it reached the required amount of purchases; (3) TMZ ceased or substantially curtailed its operation; or (4) TMZ ceased purchasing from Sherwin-Williams. (ECF No. 44-2 ¶¶ 15-16 and ECF No. 49 ¶¶ 15-16.) The parties agreed Sherwin-Williams disclaimed all warranties of any kind, including but not limited to, the implied warranty of merchantability of fitness for a particular purpose. (ECF No. 44-2 ¶ 19 and ECF No. 49 ¶ 19.) The parties also agreed the Supply Agreement constituted the entire agreement between them and that no statement made before the execution of

the Agreement could modify its terms.[1] (ECF No. 44-2 ¶ 20 and ECF No. 49 ¶ 20.) The parties further agreed the Supply Agreement would be governed by Ohio law and could be amended only by a written document that specifically stated it was an amendment of the Agreement. (ECF No. 44-2 ¶¶ 21-22 and ECF No. 49 ¶¶ 21-22.)

### B. The Guaranty

On or around July 7, 2014, Zappia personally guaranteed TMZ's payment and performance under the Supply Agreement, including TMZ's obligation to repay the Advance. (ECF No. 44-2 ¶¶ 23-24 and ECF No. 49 ¶¶ 23-24.)

### C. The Parties' Performance Under the Supply Agreement

From July 2014 to July 2015, Sherwin-Williams supplied TMZ with paint products that TMZ used to refinish roughly 1300 vehicles. (ECF No. 44-2 ¶¶ 34, 37 and ECF No. 49 ¶¶ 34, 37.) TMZ purchased some water-based paint products, but it used solvent-based paint products to refinish cars 98% of the time. (ECF No. 44-2 ¶¶ 32-33 and ECF No. 49 ¶¶ 32-33.) Defendants cited problems with the water-based paint as a significant factor in their decision to terminate the supply agreement. (ECF No. 21 ¶¶ 7, 9.) At oral argument, counsel for Sherwin-Williams argued Defendants abandoned their emphasis on this factor after Plaintiff pointed out TMZ used the solvent-based product for nearly the entire course of the Agreement. TMZ never rejected any

---

[1] At Oral Argument, Defendants' counsel argued Brian Penta ("Penta"), a Sherwin-Williams representative who visited TMZ's worksite, made representations regarding the quality and performance of the products. Penta made these alleged representations before the parties entered into the Agreement. Even if the Court accepted Defendants' claims as true, it could not consider Penta's representations, because "[i]f contracting parties integrate their negotiations and promises into an unambiguous, final, written agreement, then evidence of prior or contemporaneous negotiations, understandings, promises, representations, or the like pertaining to the terms of the final agreement are generally excluded from consideration by the court." *Bollinger, Inc. v. Mayerson*, 689 N.E.2d 62, 69 (Ohio App. 1996) (citing *Charles A. Burton, Inc. v. Durkee*, 109 N.E.2d 265 (Ohio 1952)).

orders it received from Sherwin-Williams, and TMZ did not experience significant increases or decreases in gross sales from the middle of 2014 to 2016. (ECF No. 44-2 ¶¶ 38, 40 and ECF No. 49 ¶¶ 38, 40.) At oral argument, Defendants' counsel argued it would have been difficult, if not impossible, for TMZ to reject any orders, because Sherwin-Williams entices businesses to enter into what amount to contracts of adhesion.

### D. The Termination of the Supply Agreement

In July 2015, TMZ ceased purchasing its requirements for automotive paints and related products exclusively from Sherwin-Williams, though it had not yet purchased $554,000.00 worth of goods. (ECF No. 44-2 ¶¶ 42-43 and ECF No. 49 ¶¶ 42-43.) Per the terms of the Supply Agreement, TMZ's cessation of purchases triggered the acceleration clause. (ECF No. 44-2 ¶ 44 and ECF No. 49 ¶ 44.) Defendants have not repaid the $85,000.00 Advance. (ECF No. 44-2 ¶ 45 and ECF No. 49 ¶ 45.) Defendants believed they could terminate the Agreement at any time by repaying the advance. (ECF No. 44-2 ¶ 46 and ECF No. 49 ¶ 46.)

On September 11, 2015, Sherwin-Williams provided Defendants a notice of breach. (ECF No. 44-2 ¶ 44 and ECF No. 49 ¶ 44.) At the time TMZ terminated the Supply Agreement, it had purchased $54,861.00 worth of paints and coatings and $10,736.00 worth of associated products.[2] (ECF No. 44-2 ¶ 49 and ECF No. 49 ¶ 49.) If TMZ had completed the Supply Agreement, it would have purchased an additional $499,139.00 worth of paints and coatings and, based on a projection from those sales, an additional $97,674.00 worth of associated products. (ECF No. 44-2 ¶ 50 and ECF No. 49 ¶ 50.) Sherwin-Williams calculates the profit on those lost sales would have totaled

---

[2] Pursuant to the Supply Agreement, TMZ's purchases of products other than paints and coatings were not counted toward the $554,000.00 it was required to purchase. (ECF No. 44-2 ¶ 12 and ECF No. 49 ¶ 12.)

$473,831.54, inclusive of Defendants' obligation to return the $85,000.00 Advance. (ECF No. 44-2 ¶ 51 and ECF No. 49 ¶ 51.)

In June 2015, TMZ entered into an exclusive supply agreement for automotive paints, coatings, and related products with Axalta Coating Systems ("Axalta"). (ECF No. 44-2 ¶ 54 and ECF No. 49 ¶ 54.) Axalta, which is a direct competitor of Sherwin-Williams, paid TMZ a cash advance of $110,000.00 to switch from Sherwin-Williams. (ECF No. 44-2 ¶¶ 56-57 and ECF No. 49 ¶¶ 56-57.)[3]

## II. PROCEDURAL BACKGROUND

On December 3, 2015, Sherwin-Williams filed the Complaint. (ECF No. 1.) On January 15, 2016, Sherwin-Williams filed a motion for entry of default (ECF Nos. 9), and on January 18, 2016, the Clerk entered default for failure to appear. On February 1, 2016, Defendants filed their Answer (ECF Nos. 10), and on February 15, 2016, Sherwin-Williams filed a motion to strike Defendants' Answer (ECF No. 13). On March 20, 2016, Defendants filed a motion to set aside default. (ECF No. 17.)

On April 27, 2016, the Honorable Lois H. Goodman, U.S.M.J. entered a stipulation and order that: (1) withdrew Sherwin-Williams' motion to strike; (2) set aside the entry of default; and (3) allowed Defendants' Answer to stand. (ECF No. 25.) As a condition of setting aside the default, Zappia produced a sworn affidavit stating what Defendants' defenses were. (ECF No. 21.) Zappia stated TMZ was not in breach, because the products Sherwin-Williams supplied were not "high-quality" and were not suited to TMZ's needs. (*Id.* ¶¶ 4-5.) Specifically, Zappia said the paint was not suitable because Sherwin-Williams continued to supply water-based paint despite TMZ's

---

[3] The Court notes TMZ terminated an agreement with another supplier before accepting a larger advance to enter into the Supply Agreement with Sherwin-Williams. (ECF No. 44-2 ¶¶ 25-29 and ECF No. 49 ¶¶ 25-29.) However, this conduct was not a factor in the Court's decision.

protests. (*Id.* ¶ 7.) Zappia claimed "TMZ never bargained for, or expected to receive, water-based paint." (*Id.* ¶ 9.) Zappia cited other problems with the paint, including color matching, paint thickness, and long drying times. (*Id.* ¶ 11.)

Sherwin-Williams then filed its Motion for Summary Judgment. (ECF No. 44.)

### III. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if

the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## IV. DECISION

### A. TMZ's Breach of the Supply Agreement

The parties agree Ohio law governs the Supply Agreement. (ECF No. 44-2 ¶¶ 21-22 and ECF No. 49 ¶¶ 21-22.) Under Ohio law, the Supply Agreement is an installment contract because

it "authorizes the delivery of goods in separate lots to be separately accepted." Ohio Rev. Code Ann. § 1302.70(A). A supplier breaches an installment contract in whole when a "non-conformity or default with respect to one or more installments substantially impairs the value of the whole contract." Ohio Rev. Code Ann. § 1302.70(C). A "buyer may reject any installment which is non-conforming if the non-conformity substantially impairs the value of that installment and cannot be cured." Ohio Rev. Code Ann. § 1302.70(B). "But [the buyer] reinstates the contract if he accepts a non-conforming installment without seasonably notifying of cancellation . . . ." Ohio Rev. Code Ann. § 1302.70(C).

Here, Defendants argue there are issues of material fact as to whether Sherwin-Williams breached the Supply Agreement by providing inadequate, or non-conforming, goods and impaired the value of the contract. (ECF No. 48 at 13-14.) A breach by Sherwin-Williams would relieve Defendants of their obligations under the Supply Agreement. (*Id.* (citing *Frank Stamato & Co. v. Borough of Lodi*, 4 N.J. 14, 21 (1950)).) Defendants claim TMZ experienced several problems with Sherwin-Williams' paint, including color matches and "extremely slow" drying times. (*Id.* at 15.) Defendants argue the products' inadequacies constituted a breach of both the Supply Agreement and the implied covenant of good faith and fair dealing. (*Id.* at 18.)

Defendants offer no support for their claim Sherwin-Williams breached the Supply Agreement other than the deposition testimony of Zappia and Edward Bernstein, who has been a painter for TMZ for fifteen years. (*See id.* at 2; ECF No. 44-2 ¶¶ 64-65 and ECF No. 49 ¶¶ 64-65.) "As a general proposition, 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'" (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)); *see also Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 251 (3d. Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989))

("Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment."). Defendants explain this lack of documentary evidence of their claims by claiming all communications with Sherwin-Williams were made through Penta. (ECF No. 48 at 8.) At oral argument, Defendants' counsel emphasized the fact that Sherwin-Williams has not offered a certification from Penta refuting the testimony of Zappia and Bernstein. Significantly, however, Defendants have the burden to show a genuine issue of material fact exists, and Defendants admit they never sought to depose Penta. *See Celotex Corp.*, 477 U.S. at 324 (holding, once the party seeking summary judgment has met its burden of production, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial"); *Lenherr v. Morey Org., Inc.*, 153 F. Supp. 3d 662, 665 (D.N.J. 2015) ("[The] nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party."). Therefore, the Court finds there is no material dispute of fact as to whether Sherwin-Williams breached the Supply Agreement by providing non-conforming goods, and Sherwin-Williams is entitled to judgment as a matter of law.

Even if Sherwin-Williams had breached the Supply Agreement by providing non-conforming goods, that would not preclude a grant of summary judgment to Sherwin-Williams. *See ERB Poultry, Inc. v. CEME, L.L.C.*, 20 N.E.3d 1228, 1236 (Ohio 2014) (affirming summary judgment in supplier's favor when buyer did not reject goods). The Court notes Defendants do not explain why they never rejected any of the goods, despite the alleged flaws. Defendants state only that Sherwin-Williams "does not explain how deliveries of paint could be rejected, when prior to utilizing the paint TMZ did not know whether there was a problem." (ECF No. 48 at 19.) While this explanation could explain TMZ's initial use of the allegedly non-conforming products, it

cannot account for the fact that TMZ used the products for a year without rejecting a single installment. (*See* ECF No. 44-2 ¶ 38 and ECF No. 49 ¶ 38.) Further, Defendants admit there was an instance in which they raised concerns about the products to Sherwin-Williams, which then replaced the products. (ECF No. 44-2 ¶ 84 and ECF No. 49 ¶ 84.) When TMZ was dissatisfied with the water-based system, Sherwin-Williams installed a solvent-based system. (ECF No. 44-2 ¶¶ 10-11 and ECF No. 49 ¶¶ 10-11.) Defendants repeatedly accepted non-conforming goods, which under Ohio law constituted reinstatement of the contract. *See* Ohio Rev. Code Ann. § 1302.70(C). Therefore, Sherwin-Williams is entitled to judgment as a matter of law.

As the Court finds there are no material facts in dispute as to whether Defendants breached the Supply Agreement and Sherwin-Williams is entitled to judgment as a matter of law, Sherwin-Williams Motion for Summary Judgment as to that issue is **GRANTED**.

### B. Damages

Pursuant to Ohio Law, a plaintiff may recover lost profits if "(1) the profits are within the contemplation of the parties at the time of contracting[,] (2) the loss of profits is the probable result of breach, and (3) the profits can be shown with reasonable certainty." *Miami Packaging, Inc. v. Processing Sys., Inc.*, 792 F. Supp. 560, 566 (S.D. Ohio 1991) (citations omitted). Here, the profits were in the contemplation of the parties, as the Supply Agreement provided TMZ would purchase $554,000.00 worth of goods from Sherwin-Williams. (ECF No. 44-2 ¶ 12 and ECF No. 49 ¶ 12.) The loss of profits is the probable result of the breach, because TMZ ended its relationship with Sherwin-Williams after it purchased just $54,861.00 worth of paints and coatings and $10,736.00 worth of associated products. (ECF No. 44-2 ¶ 49 and ECF No. 49 ¶ 49.) Finally, Defendants do not dispute Sherwin Williams' calculation of $473,831.54 in damages. (ECF No. 44-2 ¶¶ 49-53 and ECF No. 49 ¶¶ 49-53.)

Defendants argue Sherwin-Williams is not entitled to recover the damages it seeks because Zappia believed he could terminate the Supply Agreement at any time as long as he returned the $85,000.00 Advance. (ECF No. 48 at 20.) However, the Supply Agreement stated a return of the advance would not be construed as liquidated damages or as a limitation of Sherwin-Williams' remedies. (ECF No. 44-2 ¶ 17 and ECF No. 48 at 21.) Defendants characterize this provision as being "[b]**uried** at the end of the agreement **in small print**." (ECF No. 48 at 21.) At oral argument, Defendants' counsel made an impassioned argument about Zappia's lack of business acumen relative to an entity with the resources of Sherwin-Williams. The Court does not find this argument persuasive, however, as Zappia has been in the auto body business since 1976 and has participated in similar supply agreements both before and after this transaction. (*See* ECF No. 48 at 2-3.) Pursuant to Ohio law, contract terms are generally enforceable when they have been negotiated by sophisticated parties in arm's-length transactions. *See Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718, 721 (6th Cir. 2006); *Energy Marketing Servs., Inc. v. Homer Laughlin China Co.*, 186 F.R.D. 369, 375 (S.D. Ohio 1999); *Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.*, 66 Ohio St.3d 173, 175 (Ohio 1993). The parties freely entered into the Supply Agreement and agreed to be bound by its terms. Defendants cite no authority to support their argument that Zappia's subjective belief he could terminate the contract precludes Sherwin-Williams from an award of lost profits.

The Court finds Sherwin-Williams is entitled to summary judgment on the issue of damages in the amount of $473,831.54, and its Motion is therefore **GRANTED**.

## V. CONCLUSION

For the foregoing reasons, Sherwin-Williams' Motion for Summary Judgment is hereby **GRANTED**. An appropriate Order will follow.

**Date: September 18, 2017**

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**